**UNITED STATES of America,**
**Plaintiff,**

v.

**Joyce FREEMAN, Defendant.**

**No. 67 CR 121.**

United States District Court
N. D. Illinois, E. D.

Sept. 22, 1967.

Edward V. Hanrahan, United States Atty., Richard G. Schultz, Asst. U. S. Atty., Chicago, Ill., for the Government.

William Levinson, Chicago, Ill., for defendant.

MEMORANDUM OPINION

MAROVITZ, District Judge.

Defendant's Motion to Dismiss the Information

Defendant, Joyce F. Freeman, is charged in a four count information, with knowingly selling and possessing methamphetamine powder, a "depressant or stimulant drug" within the meaning of 21 U.S.C. Sec. 321(v), on two occasions, in violation of 21 U.S.C. Secs. 331(q) (2) and (3).[1]

She moves to dismiss, on the dual grounds that Sections 331(q) (2) and (3) are unconstitutional in attempting to regulate matters beyond the powers of the Federal Government, and that the information is defective since it does not charge the defendant with engaging in activities affecting or relating to interstate commerce.

More specifically, defendant states that Sections 331(q) (2) and (3) attempt to regulate the sale or possession of certain drugs without regard to the relationship of the possession or sale to interstate commerce, and with no requirement that the drugs have moved in interstate commerce. She asserts that Congress has no power to regulate purely intrastate matters without a showing that such matters directly affect interstate commerce, and further alleges that such effect must be alleged and proved.

Many cases have sustained the power of Congress to regulate local activities which affect interstate commerce. Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 251–258, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); Katzenbach v. McClung, 379 U.S. 294, 299–304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); United States v. Wrightwood Dairy Co., 315 U.S. 110, 119–121, 62 S.Ct. 523, 86 L.Ed. 726 (1942); Wickard v. Filburn, 317 U.S. 111, 118–128, 63 S.Ct. 82, 87 L.Ed. 122 (1942); United States v. Darby, 312 U.S. 100, 119–121, 61 S.Ct. 451, 85 L.Ed. 609 (1941).

The Drug Abuse Control Amendments of 1965, which included Sections 331(q) (2) and (3), were enacted as part of the Federal Food, Drug, and Cosmetic Act, with the avowed purpose of curtailing traffic in certain types of drugs which lend themselves to widespread misuse throughout the nation, which often travel in interstate commerce, and which usually are distributed without any labels showing their place of origin. As defendant points out, the Amendments do not require a showing that the drugs involved in a particular transaction moved in interstate commerce. The reasons which prompted Congress to enact legislation of this type are contained in the "Congressional Findings and Declaration of Policy," reported in Section 2 of the Amendments, Public Law 89–74, 79 Stat. 226,[2] as follows:

"The Congress hereby finds and declares that there is a widespread illicit traffic in depressant and stimulant drugs moving in or otherwise affecting interstate commerce; that the use of such drugs, when not under the supervision of a licensed practitioner, often endangers safety on the highways (without distinction of interstate and intrastate traffic thereon) and otherwise has become a threat to the public health and safety, making additional regulation of such drugs necessary regardless of the intrastate or

1. Section 331(q) (2) and (3) provides:
"Sec. 331. Prohibited acts
The following acts and the causing thereof are prohibited:
* * * * *
(q) (2) the sale, delivery, or other disposition of a drug in violation of section 360a(b) of this title;

(3), the possession of a drug in violation of section 360a(c) of this title;

2. The above Findings are also reported in the Notes following 21 U.S.C.A. Sec. 360a, p. 121 of the 1966 Cumulative Annual Pocket Part.

interstate origin of such drugs; that in order to make regulation and protection of interstate commerce in such drugs effective, regulation of intrastate commerce is also necessary because, among other things, such drugs, when held for illicit sale, often do not bear labeling showing their place of origin and because in the form in which they are so held or in which they are consumed a determination of their place of origin is often extremely difficult or impossible; and that regulation of interstate commerce without the regulation of intrastate commerce in such drugs, as provided in this Act (see Short Title note under this section), would discriminate against and adversely affect interstate commerce in such drugs."

■ The power of Congress to regulate interstate commerce may be asserted without a specific requirement that individual transactions be involved in interstate activity. Several cases have upheld Congressional power over purely intrastate matters which so affected interstate commerce "as to make regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce * * *" United States v. Wrightwood Dairy Co., 315 U.S. 110, 119, 62 S.Ct. 523, 526, 86 L.Ed. 726 (1942); Wickard v. Filburn, 317 U.S. 111, 127–128, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

It is unimportant whether the local activity be large or small, as is evidenced by the following statement from N. L. R. B. v. Reliance Fuel Oil Corp., 371 U.S. 224, 226, 83 S.Ct. 312, 314, 9 L.Ed.2d 279 (1963):

"Whether or not practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked

may well become far reaching in its harm to commerce."

See Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 258, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964).

Indeed, in referring to a line of cases upholding the Congressional power where intrastate and interstate activities are interwoven and difficult to separate, the Supreme Court said in United States v. Darby, 312 U.S. 100, 121, 61 S.Ct. 451, 460, 85 L.Ed. 609 (1941):

"A familiar * * * exercise of power is the regulation of intrastate transactions which are so commingled with or related to interstate commerce that all must be regulated if the interstate commerce is to be effectively controlled."

■ The Darby language is peculiarly appropriate in these circumstances. Congress has determined that the control of illicit interstate traffic in stimulant and depressant drugs would be rendered ineffective by the need to trace the origin of each drug in issue. This is understandable in view of the unlabeled status of the large percentage of these drugs. In effect, Congress has decided that to effectively control the interstate traffic in these drugs, all transactions involving them must be governed by the Act. An attempt to separate intrastate transactions from those in interstate commerce would apparently be a futile exercise, and would interfere in a substantial way with and obstruct the exercise of the granted power to regulate interstate commerce.

Under these circumstances, there need be no requirement that the activities in each individual instance be proven to relate to and affect interstate commerce, for Congress has determined that each local transaction has a deleterious effect upon its efforts to regulate interstate commerce. Wickard v. Filburn, 317 U. S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). It is apparent that in order to effectuate the plenary power of Congress to regulate interstate traffic in stimulant and depressant drugs, the regulation of pure-

ly intrastate transactions involving those drugs must also be regulated. To exempt local transactions would severely hamper the effort to control interstate traffic in these drugs. Consequently local transactions have an effect upon the interstate traffic, and are subject to regulation under existing law. Heart of Atlanta Motel, Inc., supra.

We think that determination by Congress is certainly reasonable under the circumstances and must be upheld. Since the statute does not require that a relationship to interstate commerce be proved, the failure to charge in the information that defendant's transactions involved interstate commerce cannot form the basis for a dismissal of the information.

Defendant's motion is denied.